Rajis ASHKIN, Plaintiff–Appellant,

v.

TIME WARNER CABLE CORPO-
RATION, Defendant–Appellee.

No. 93–3824.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1994.

Decided April 4, 1995.

Michael A. Moynihan (argued), Joan M. Dillon, Moynihan & Dillon, Chicago, IL, for Rajis Ashkin.

Lester H. Cohen, John R. Maley (argued), Barnes & Thornburg, Indianapolis, IN, for Time Warner Cable, Corp.

Before POSNER, Chief Judge, MANION, Circuit Judge, and ASPEN, District Judge.*

ASPEN, District Judge.

Plaintiff Rajis Ashkin appeals from the order of the district court entering judgment in favor of defendant Time Warner Cable Corporation ("Time Warner"). For the reasons set forth below, we affirm.

## I. BACKGROUND

Ashkin is a Malaysian female who was employed by Time Warner in its Terre Haute, Indiana office from September, 1985 until her termination in April, 1987. She claims that her supervisor, Kevin Grossman, made sexual overtures, called her at home for personal reasons, asked her if she was "available," and otherwise sexually harassed her.[1] On April 10, 1987, following some work-related friction between Grossman and Ashkin, Grossman called Ashkin into his office for a performance review. Also present was Grossman's secretary, an African–American female. Ashkin objected to the secretary's presence, and refused to proceed with the review. Grossman then called Katie Markman in Time Warner's Denver divisional headquarters, so that Markman could confirm that the secretary's presence was not a violation of company policy. Ashkin spoke with Markman, complaining about Grossman's managerial style. Ashkin also claims that she complained about his sexual advances and sexist attitude, a charge denied by Markman.[2] While Ashkin was on the

---

* The Honorable Marvin E. Aspen, District Judge of the Northern District of Illinois, sitting by designation.

1. As discussed further below, Ashkin could provide no independent support for these claims, and all of the other persons allegedly involved specifically denied them.

2. Ashkin took notes of her conversation with Markman. As Ashkin admitted on cross-examination, she made no reference to sexual harass-

phone, her husband, Ron Ashkin, arrived at the office. He took the phone from his wife and emphatically expressed his concern about Grossman's conflicts with his wife, as well as the effect that the conflicts were having on his wife. In addition, he threatened unspecified litigation. Ron Ashkin also claims that he complained about Grossman's sexual conduct toward his wife, although this claim was again directly refuted by Markman.

The review did not continue that day, but took place the following week. This time, another individual, Chief Engineer Al Winn, was present in Grossman's office. Ashkin again objected, and Grossman told her to stay and receive her review or face termination. He then read a number of criticisms of Ashkin's performance. Ashkin stated that she did not agree with the critical review. When she protested, Grossman responded that she was insubordinate and refused to accept responsibility for her faults, and then terminated her.

Immediately after she was terminated, Ashkin filed for unemployment benefits with the Indiana Employment Security Division. Her claim was contested by Time Warner, which asserted that she had been fired "for cause," as defined by Indiana Code § 22–4–15–1(d), and was thus not entitled to unemployment benefits. Although the deputy and, on appeal, the appeals referee concluded that Ashkin had been terminated for cause, those decisions were overruled by the Review Board of the Division. The Review Board concluded that Ashkin was terminated because she refused to accept the discipline given to her, rather than for a statutory act of misconduct. Time Warner appealed this decision, but the Review Board was affirmed by the Court of Appeals of Indiana. It specifically concluded that "Ashkin was discharged because of her unwillingness to allow discipline to be given to her when the notice

was read to her, not because of other acts of misconduct." *American Cablevision v. Review Bd. of Ind. Employment Sec. Div.*, 526 N.E.2d 240, 243 (Ind.App.Ct.1988).

Ashkin subsequently filed the present action, alleging violations of Title VII, the Equal Pay Act, and Section 1981, as well as various common law torts. In the course of the litigation, the parties filed a stipulation dismissing the Equal Pay Act and Section 1981 claims, as well as most of Ashkin's state law claims. In addition, the district court granted summary judgment to Time Warner on Ashkin's state law defamation claim. As a result, the only claim left was Ashkin's Title VII claim. The district court referred the entire case to Magistrate Judge J. Patrick Endsley as special master, pursuant to 42 U.S.C. § 2000e–5(f)(5).[3] Ashkin moved for partial summary judgment on the issue of whether she had been terminated for "just cause," asserting that the Review Board's decision was entitled to preclusive effect under the doctrine of collateral estoppel. Magistrate Judge Endsley recommended denial of the partial summary judgment motion, concluding that Indiana law would not apply collateral estoppel to the Review Board's decision. Although he informed the parties that they had ten days to file objections to the Report and Recommendation, he neglected to state that failure to object would result in waiver, as required by *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989). The district court adopted Magistrate Judge Endsley's Report and Recommendation, specifically noting that no objections had been received.

The action proceeded to a bench trial before the magistrate judge. He concluded that Ashkin and her husband were not credible witnesses, while the witnesses who appeared on behalf of Time Warner were credi-

---

ment, a sexist attitude, or anything else "sexual" in those notes. In addition, following her termination, Ashkin prepared a "diary" of the events at Time Warner. She acknowledged on cross-examination that some of the specific sexual incidents she complained of at trial were not noted in her journal, nor were they identified during her deposition.

3. That section provides, in relevant part:

> If [the assigned judge] has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

42 U.S.C. § 2000e–5(f)(5).

ble.[4]  Specifically, he characterized at least three incidents related by Ashkin as implausible at best.  He also noted that Ashkin offered no supporting evidence whatsoever, in the form of diary entries, written grievances, or other documents, regarding her claim of Grossman's sexual advances.  As a result, he determined that Ashkin had not in fact complained about any sexual harassment, and that her expressed objections regarding Grossman were limited to his managerial style.  Accordingly, Magistrate Judge Endsley concluded that Ashkin failed to prove her prima facie case of retaliatory discharge, because she did not demonstrate that she engaged in a protected activity, *i.e.*, complaining about sexual harassment.[5]  The magistrate judge entered a report and recommendation regarding his findings, and included the required *Provident Bank* warnings.  Although Ashkin filed objections, she did not challenge the magistrate judge's denial of her motion for partial summary judgment.  Nor did she raise the issue in her post-trial brief.  The district court overruled Ashkin's objections and entered judgment according to the magistrate judge's report and recommendation.  Ashkin now brings this appeal from the order of the district court, challenging several of Magistrate Judge Endsley's findings and conclusions.

## II.  DISCUSSION

■  On appeal, Ashkin asserts that the district court erred in following the recommendation of Magistrate Judge Endsley and denying her motion for partial summary judgment.  She also maintains that, in considering her claim of retaliatory discharge at the bench trial, the magistrate judge should have employed the approach set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and that the district court erred in overruling her objections and in entering judgment according to the Magistrate Judge's Report and Recommendation.[6]  The relevance of both of these arguments, however, is entirely dependent upon her assertion that Magistrate Judge Endsley's factual findings are clearly erroneous.  Accordingly, we shall consider that issue first.

■  In order to prevail on a claim of retaliatory discharge, a plaintiff must prove, by a preponderance of the evidence, that (1) she was engaged in a protected activity;  (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.  *Reed v. Shepard*, 939 F.2d 484, 492 (7th Cir.1991).  Magistrate Judge Endsley concluded that "[n]o credible evidence indicates plaintiff ever made a complaint to Markman about actions which would violate Title VII."  Magistrate Judge's Report & Recommendation at 14 (Oct. 8, 1993).  As a result, he determined that Ashkin failed to demonstrate that she engaged in statutorily protected activity.  On appeal, Ashkin submits essentially three arguments in support of her assertion that this finding was clearly erroneous.  In her opening brief, Ashkin simply states that "it is obvious that Ms. Ashkin met her initial burden of establishing a prima facie case of retaliation since defendant's motion to dismiss was denied at the end of plaintiff's case-in-chief."  Appellant's Initial Brief at 32.[7]  While this assertion may be

---

4.  He questioned Grossman's credibility, but concluded that the other defense witnesses were reliable on the matters at issue.

5.  In the alternative, Magistrate Judge Endsley held that, even if the harassment in fact occurred, Ashkin failed to demonstrate that Ashkin's complaint regarding such harassment, as opposed to her insubordination and refusal to accept criticism, were the cause of her termination.  The magistrate judge also ruled in Time Warner's favor on Ashkin's other Title VII claims, quid pro quo sexual harassment and sexual discrimination.  However, only the retaliation claim is advanced on appeal; the remaining rulings have not been challenged.

6.  Under the *Price Waterhouse* test, once the plaintiff has demonstrated that the employer was influenced by an impermissible motive, the burden shifts to defendant to prove, by a preponderance of the evidence, that the same action would have been taken even if the impermissible characteristic were not taken into account.  *Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88.

7.  We initially note that Ashkin has essentially waived this argument by providing no analysis beyond this unsupported statement.  *See* Fed. R.App.P. 28(a)(5); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984.  Nonethe-

true, it is also irrelevant. A motion to dismiss under the old version of Rule 41(b), which was the basis for Time Warner's motion, merely tests the legal sufficiency of the plaintiff's case.[8] *See Sanders v. GSA,* 707 F.2d 969, 971 (7th Cir.1983). Denial of such a motion does not mean, as Ashkin seems to believe, that the plaintiff has *proven* all of the elements of her claim. The plaintiff still must prove, by a preponderance of *all* of the evidence, that she is entitled to relief. *See id.* at 972; *EEOC v. General Motors Corp.,* 826 F.Supp. 1122, 1126 (N.D.Ill.1993). In the present case, the magistrate judge presumably denied the Rule 41(b) motion because the evidence adduced by Ashkin, if believed, established a colorable claim of retaliation. At the close of all of the evidence, however, the magistrate judge concluded that that evidence was *not* believable, and therefore entered judgment in favor of Time Warner. Because those two rulings are not inconsistent, there is no merit to Ashkin's argument.

Ashkin next argues that the magistrate judge effectively "required [her] to relate the behavior to which she was subjected using certain 'magic words' in order to be considered to have engaged in protected speech." Appellant's Initial Brief at 28. We disagree. This is not a case in which the plaintiff complained of sexual harassment, but failed to use that "magic" phrase. *Cf. Hawley v. Dresser Indus., Inc.,* 737 F.Supp. 445, 452 (S.D.Ohio 1990) (court "decline[d] to penalize [plaintiff] for failing to use the magic words 'discriminatory demotion' in addition to 'discriminatory discharge'" in EEOC charge, where discriminatory demotion claim was ev-

ident from facts in charge), *aff'd in part and remanded on other grounds,* 958 F.2d 720 (6th Cir.1992). On the contrary, the magistrate judge concluded as a factual matter that Ashkin never asserted to Markman that Grossman had a sexual or gender basis for his criticism of her work; instead, the magistrate judge found that her complaints arose solely out of a non-sexual personality clash between two aggressive individuals. This case therefore does not present a situation in which the plaintiff actually (but inartfully) raised the Title VII issue in her complaint to defendant. *See, e.g., Hawley,* 737 F.Supp. at 451–52.[9]

This argument does, however, foreshadow Ashkin's final argument. She asserts that the conclusion that she failed to engage in protected activity was, on the evidence presented, simply incorrect. In *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court articulated the appropriate scope of our review:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
>
> This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical

---

less, because the argument can readily be dispensed with on the merits, we shall briefly address it here.

8. Rule 41(b), prior to its amendment in 1991, read, in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Fed.R.Civ.P. 41(b).

9. Indeed, Magistrate Judge Endsley expressly found that Ashkin's "Are you available?" allegation was meritless and that "Grossman made no other explicit or implied requests for sexual favors or advances...." Magistrate Judge's Report & Recommendation at 13 (Oct. 8, 1993). He therefore concluded that Ashkin was not sexually harassed. *Id.* This factual finding (unless clearly erroneous) further eliminates any contention that Ashkin was complaining about behavior prohibited by Title VII. That is, Magistrate Judge Endsley not only concluded that Ashkin did not complain about sexual harassment, but that, as a factual matter, such harassment did not occur.

or documentary evidence or inferences from other facts.

*Id.* at 573–74, 105 S.Ct. at 1511–12 (citations omitted).

In an argument first fully set forth in her reply brief, Ashkin maintains that the magistrate judge failed to take into account several factors which Ashkin claims support her assertion that she engaged in protected activity.[10] Specifically, she suggests that Magistrate Judge Endsley failed to consider the fact that she had been given a "superior" performance rating by Grossman four and one half months prior to her discharge; that Grossman's claim that he had prepared the written performance evaluation prior to her discharge was suspect; and that she had won several awards, a fact at odds with the conclusion that her termination was based in part on poor performance. In addition, she maintains that it was unreasonable to conclude that she threatened legal action, a fact admitted by defendants, but that the threatened lawsuit was not connected to a complaint about sexual harassment. She concludes:

> If Ashkin was not telling national officers of Time Warner about Grossman's sexually confrontational behavior, the Magistrate would have to find that Ashkin had otherwise made the decision to complain to higher management about her immediate supervisor's management style: an unusually unwise career move.

Appellant's Reply Brief at 5.

We initially observe that some of Ashkin's assertions are simply incorrect. For example, Ashkin herself testified that Grossman had initially only rated her "competent," and that she insisted that she be rated "superior," or she would not sign the evaluation form. Indeed, she testified that she marked "superior" on the form herself, after Grossman stated that he was unwilling to do so.

Her current suggestion that Grossman's evaluation of her went from "superior" to "poor" is therefore marginal, at best. Regarding Ashkin's second claim of error, Magistrate Judge Endsley specifically questioned the accuracy of Grossman's representations regarding the drafting of the performance evaluation, and concluded that Grossman was not particularly credible, at least with respect to that issue.[11]

In any event, Ashkin's claim is ultimately unavailing. The record is replete with evidence, including Ashkin's own testimony, which supports a finding that Ashkin constantly challenged Grossman's business decisions, both to Grossman and to his superiors at Time Warner. Indeed, the record demonstrates that the conflict between the two began the day that Grossman began working at Time Warner's Terre Haute subsidiary in September, 1986, and continued with increasing intensity until her termination in April, 1987. Magistrate Judge Endsley's conclusion that Ashkin was once again challenging Grossman's management style in her phone call to Markman is therefore entirely consistent with the evidence adduced at trial, contrary to Ashkin's present assertion. In short, none of the factors identified by Ashkin contradicts Magistrate Judge Endsley's decision to credit the testimony of Time Warner's witnesses, or his conclusion that Ashkin and her husband were, on the whole, simply not credible. *See Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Accordingly, we conclude that Magistrate Judge Endsley's determination that Ashkin failed to en-

---

**10.** Although Ashkin asserted in her opening brief that the magistrate judge's judgment in Time Warner's favor was clearly erroneous, she did not raise the instant argument in support of that claim until her reply brief, and we are therefore not required to consider it. *Wilson v. Electro Marine Sys., Inc.,* 915 F.2d 1110, 1117 (7th Cir. 1990). However, Time Warner did not object to the argument or move to strike it; on the con-

trary, it responded to it during oral argument. In any event, as discussed further above, Ashkin's contention is clearly unmeritorious, and we can therefore dispense with it in short order.

**11.** Magistrate Judge Endsley did, however, find that Time Warner's other witnesses were generally credible.

gage in protected expression, is "plausible in light of the record viewed in its entirety," *id.* at 574, 105 S.Ct. at 1511, and is therefore not clearly erroneous.

■ In light of this conclusion, Ashkin's remaining arguments are empty. As noted above, she asserts that the magistrate judge should have analyzed her claim under *Price Waterhouse*. However, having produced no credible evidence that she complained about the alleged sexual harassment, Ashkin's lawsuit clearly does not fall into the narrow class of cases contemplated by *Price Waterhouse. See Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1794–95 (*Price Waterhouse* burden shifting rule is only applicable "[w]hen a plaintiff in a Title VII case *proves* that [an impermissible factor] played a motivating part in an employment decision") (emphasis added). She also maintains that Time Warner should have been collaterally estopped from relitigating whether she was terminated "for cause," in light of the ruling of the Indiana Employment Security Division Review Board. Time Warner retorts that this issue has been waived, as Ashkin did not raise the matter in her post-trial brief, or in her objections to the magistrate judge's final Report and Recommendation. However, as long as Time Warner did not retaliate against Ashkin (because she did not engage in any speech which would prompt retaliation), its "real" reasons for terminating her are irrelevant, at least for purposes of a retaliatory discharge claim. At worst, then, the magistrate judge's denial of Ashkin's partial summary judgment motion and admission of Time Warner's proffered reasons for discharge were harmless error. *Cf. Goff v. Continental Oil Co.*, 678 F.2d 593, 597 n. 4 (5th Cir.1982) (exclusion of evidence relating to company's reason for discharge and issue of pretext harmless error when plaintiff failed to prove prima facie case of discrimination); *Lewis v. Gillette Co.*, 22 F.3d 22 (1st Cir.1994) ("Since we find that Lewis failed to establish a prima facie case of retaliatory discharge, we need not consider the additional ground, insufficient evidence of pretext, relied upon below.").

■ Finally, Time Warner asks that we sanction Ashkin under Fed.R.App.P. 38 for filing a frivolous appeal. Under Rule 38, sanctions are justified "when the result is obvious or when the appellant's argument is wholly without merit." *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir.1994) (internal quotations and citations omitted). In *Rennie v. Dalton*, 3 F.3d 1100 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994), this court awarded sanctions to a defendant in a Title VII case. The court noted:

> While Rennie may have entertained some hope of prevailing before the trier of fact, once the district court ruled against her on all the important factual issues, she could not possibly have maintained any reasonable belief that we would reverse the court's finding on appeal. The only hope Rennie had of prevailing on appeal was for us to reverse the trial judge's findings of fact which were based on the credibility of several witnesses.... Accordingly, we believe Rennie's appeal was frivolous as all she did was restate and reargue facts and credibility issues previously ruled upon in the district court.

*Id.* at 1110–11. The court therefore concluded that sanctions were appropriate. *Id.* at 1111.

■ The instant case is indistinguishable. Once the magistrate judge concluded that Ashkin was not credible, and had therefore failed to prove the elements of her claim, the possibility of success on appeal was virtually nonexistent. *See id.* at 1110 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ). Indeed, Ashkin's trial counsel was alerted to this fact by Time Warner, which warned her that sanctions would be sought in the event an appeal was filed, and included a copy of *Rennie* in the correspondence. Trial counsel apparently declined to participate in an appeal, so Ashkin filed the notice of appeal *pro se,* and subsequently retained appellate counsel. From these facts, it appears that Ashkin herself was likely made aware of the insurmountable challenge she faced on appeal; we therefore conclude that she and her appellate counsel shall each pay half of the defendant-appellee's costs and reasonable attorneys' fees stemming from this appeal.

Pursuant to Circuit Rule 38, we must provide Ashkin and her attorney an opportunity to respond. Ashkin and her appellate attorney shall submit their respective responses (or collective response) to the clerk of this Court within fifteen days of the date of this opinion. Counsel for Time–Warner shall also submit to the clerk of this Court within fifteen days an accounting of attorney's fees and costs incurred in this appeal.

## III. CONCLUSION

For the reasons set forth above, the judgment of the district court is

AFFIRMED.